IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

YOUNG Y. W. ,

    Plaintiff,

vs.

ANDREW M. SAUL,[1]
Commissioner of Social Security
Administration,

    Defendant.

Case No. 18-CV-154-CVE-FHM

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*,

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Andrew M. Saul, Commissioner of Social Security Administration, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's October 14, 2014, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Deirdre O. Dexter was held February 15, 2017. By decision dated March 23, 2017, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 19, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 47 years old on the amended date of alleged onset and 53 on the date of the ALJ's denial decision. She was educated through high school in South Korea and received training as a nail technician. She formerly worked as a embroidery machine operator. She claims to have been unable to work since October 11, 2011, as a result of back pain, depression, anxiety, somatic dysfunction disorder, hearing loss, and obesity.

## The ALJ's Decision

The ALJ determined that, although Plaintiff has a hearing deficit, there is no record of treatment in the case record and therefore concluded that hearing loss is a non-severe impairment. Based on objective findings regarding Plaintiff's gait, range of motion, and grip strength the ALJ found that Plaintiff's mild obesity, osteoarthritis, and right shoulder impairment are non-severe, meaning they do not significantly limit Plaintiff's physical or mental ability to do basic work activities. [R. 14].

The ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; able to sit for up to 6 hours in an 8-hour workday; able to stand and/or walk up to 6 hours in an 8-hour workday; perform simple, routine tasks with regular breaks every 2 hours; able to occasionally interact with supervisors as needed to receive work instructions; able to work in proximity to coworkers with no more than occasional direct work interaction with coworkers; and no interaction with the general public. [R. 16].

The ALJ found that Plaintiff is capable of performing her past relevant work as an embroidery machine operator and alternatively determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step four of the of the five-step evaluative sequence for determining whether a claimant is disabled with an alternative step five finding. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that: the ALJ's step four finding is not supported by substantial evidence; the Commissioner failed to sustain her burden at step five; and the RFC as to Plaintiff's physical impairments are not supported by substantial evidence.

## Analysis

The undersigned has addressed Plaintiff's alleged errors in the order in which the challenged findings or analysis occurred in the five step evaluative sequence.

RFC Determination

Plaintiff asserts that the case should be remanded because there are no opinions or medical evidence as to her functional limitations stemming from degenerative disc disease and somatic dysfunction disorder, and as a result the RFC is not supported by substantial evidence.

The claimant is responsible for furnishing medical evidence of claimed impairments. *See* 20 C.F.R. §§ 404.1512(a)(c), 416.912(a)(c). Furthermore, there are two physical consultative examinations and findings contained in Plaintiff's treatment records which the ALJ outlined and relied upon in formulating the RFC finding. [R. 17-22]. These records constitute substantial evidence to support the RFC finding. To the extent the disjointed collection of case citations contained in Plaintiff's brief can be read as an assertion that the ALJ failed to develop the record, the undersigned rejects that contention. At the hearing Plaintiff's attorney advised the ALJ, "I think you have all the evidence that you need to make a decision." [R. 63].

Further, there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at *5); see also 20 C.F.R. §§ 404.1546(c) and 416.946(c). The Tenth Circuit has thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; see, e.g ., *Wall*

4

*v. Astrue,* 561 F.3d 1048, 1068–69 (10th Cir. 2009)(upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302–03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

Plaintiff asserts that the ALJ erred by failing to include any limitation for Plaintiff's hearing loss in the RFC. The ALJ acknowledged Plaintiff's testimony that she is 100% deaf in her left ear and has a 40% loss in her right ear. The ALJ also noted the March 27, 2012 observation by a consultative examiner that Plaintiff had a hearing loss, and the February 11, 2015 consultative examiner's comment that Plaintiff had decreased hearing acuity in the right ear but had no difficulty carrying on a conversation in a normal voice in a quiet room. The doctor stated that although she had some difficulty understanding and following his commands, he attributed that to more of a language barrier than decreased hearing. [R. 13]. The ALJ also noted that although Plaintiff has a hearing deficit she responded adequately to questions posed at the hearing and there is no record of treatment in the record. The ALJ concluded that Plaintiff's hearing loss was non-severe. [R. 14]. A non-severe impairment is one that would have not more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521, 416.921.

Plaintiff asserts that the ALJ was required to include hearing limitations in the RFC and in hypothetical questions posed to the vocational expert. She points out that when the ALJ added the limitation that "any noise level should be no more than that found in an office setting," [R. 88], the past work as an embroidery machine operator was eliminated as were two of the three jobs the vocational expert identified as being responsive to the hypothetical question containing the decisional RFC. [R. 89]. The ALJ did not include any limitation on

noise in the RFC. Plaintiff argues that it was error for the ALJ to omit environmental limitations due to her hearing loss.

Although Plaintiff did not receive medical treatment for it, she did have a hearing loss. However, the ALJ accurately reported the consultative examiners' observations and her own observation about Plaintiff's ability to hear. The ALJ also noted Plaintiff's testimony that she can hear talking as long as the television is not too loud. Plaintiff points out that at the end of the hearing, the ALJ asked Plaintiff's counsel to explain the process going forward because, "I hate feeling like I'm having to shout at [Plaintiff]." [R. 92]. Plaintiff states that this comment indicates Plaintiff requires limitations with respect to her work environment due to hearing loss. [Dkt. 12, p. 10].

Even though it is established that Plaintiff has some manner of hearing loss, there is nothing in the record to suggest that Plaintiff necessarily requires a quiet environment or that any particular work-related restriction is necessary to enable her to perform a job. This court cannot re-weigh the evidence. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 735-36 (10th Cir. 2012)(citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)). The undersigned finds that in view of the information contained in the record that Plaintiff is able to hear conversational tones and the absence of evidence that any particular restriction is required, the ALJ's RFC is supported by substantial evidence.

## Step Four Determination

At step four of the evaluative sequence, the ALJ determines whether the Plaintiff can return to any past relevant work with her RFC. The ALJ found that Plaintiff can return to her former work as an embroidery machine operator. [R. 22]. However, the ALJ also made alternative step five findings that there are other jobs in the economy that Plaintiff could

perform with the RFC limitations. If the ALJ's step five finding is supported by substantial evidence, that finding provides a sufficient basis for denying disability. As a result, it is not necessary to address Plaintiff's step four allegations. Any error at step four cannot, standing alone, constitute a basis for remand of the ALJ's decision.

## Step Five Determination

At step five of the evaluative sequence, the ALJ determines whether there exists in the national economy any work that Plaintiff can perform with her RFC. Plaintiff's RFC limits her to performing work with only occasional interactions with supervisors as needed to receive work instructions and no more than occasional direct work interaction with co-workers. [R. 16]. Plaintiff argues that the job of assembler, DOT # 703.684-022, 1991 WL 679050, is beyond her RFC because the text description of the job in the Dictionary of Occupational Titles (DOT) contains the following language: "Frequently works at bench as a member of assembly group assembling one or two specific parts and passing unit to another worker." According to Plaintiff, this aspect of the job exceeds her RFC.

The undersigned rejects this argument. The DOT specifically quantifies how much the worker in a particular job is required to function in relation to data, people, and things by assigning ratings to each job that identify what the DOT describes as "the highest appropriate function" required on the job with respect to dealing with data, people, and things. DOT Appendix B–Explanation of Data, People, and Things, 1991 WL 688701. The "people" ratings range from the highest rating, 0, which requires mentoring, to the lowest

rating, 8, which requires taking instructions.[3]  *Id*.  In addition to providing a "people" rating, each DOT job description indicates whether the "people" aspect of the job is "significant," or "not significant."  The "people" rating for the assembler job is 8, the lowest rating.  Furthermore, the DOT states "people" aspect of the job is "not significant."  Contrary to Plaintiff's assertion, the job of assembler does not exceed her RFC restrictions and there is no conflict between the vocational expert testimony and the DOT in this regard.

Plaintiff also argues that the ALJ's RFC limitation to simple routine tasks is inconsistent with the opinion of the state agency psychological consultant, William H. Farrell, PhD, who reviewed Plaintiff's medical records and rendered an opinion about her mental RFC.  Specifically, Plaintiff asserts that the RFC for simple routine tasks is not consistent with this part of Dr. Farrell's opinion:

> Clmt retains the [concentration, persistence, or pace] for 1-2 step instructions for 2 hour periods over an 8 hour day throughout a week/40 hrs.

[R. 107-108].  The quoted language is found in that part of Dr. Farrell's assessment where he performed the required analysis known as the psychiatric review technique (PRT),[4] not in Dr. Farrell's final conclusion about Plaintiff's mental RFC.  Dr. Farrell opined the following about Plaintiff's mental RFC:

---

[3] The "people" ratings are:  0-mentoring; 1-negotiating; 2-instructing; 3-supervising; 4-diverting; 5-persuading; 6-speaking-signaling; 7-serving; 8-taking instructions-helping.  DOT App. B.

[4] When there is evidence of a mental impairment that allegedly prevents a claimant from working, at each level of the administrative process, the evaluator must follow the procedure for evaluating mental impairments set forth in the regulations.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The procedure for evaluating alleged mental impairments requires consideration of the effect of the alleged mental impairment on four broad areas of functioning known as the "paragraph B" criteria:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage oneself.  These criteria represent the areas of mental functioning a person uses in a work setting.  *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (C).

> Claimant can perform simple tasks with routine supervision.
> Claimant can relate to supervisor's [sic] and peers on a superficial work basis.
> Claimant cannot relate to the general public.
> Claimant can adapt to a work situation.

[R. 108]. The undersigned finds the ALJ's RFC limitation to performing simple and routine tasks is entirely consistent with Dr. Farrell's opinion.

Plaintiff states that two of the jobs identified by the vocational expert are assigned a reasoning level of 2, whereas Dr. Farrell's finding that plaintiff has the concentration to perform 1-2 step instructions restricts her to performing only jobs that are assigned a reasoning level one by the DOT. Reasoning level one is defined in the DOT as:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C–Components of the Definition Trailer, 1991 WL 688702. From the foregoing language one might conclude that only jobs with the reasoning level one rating are suitable for one limited to performing one or two step instructions. However, the DOT reasoning level addresses the worker's educational level and is not necessarily related to whether the job entails simple and routine tasks, or one or two step instructions.

A reasoning level is assigned to every job by the DOT as part of what the DOT calls a scale of General Educational Development (GED). The DOT explains that GED "embraces those <u>aspects of education</u> (formal and informal) which are required of the worker for satisfactory job performance." *DICOT APPENDIX,* Appendix C–Components of the Definition Trailer, III General Educational Development (GED), 1991 WL 688702. (emphasis supplied). The DOT further explains, "[t]his is <u>education</u> of a general nature

which <u>does not</u> have a recognized, fairly specific occupational objective." *Id.* (emphasis supplied).  The GED rates three areas:  reasoning development, mathematical development, and language development.  Plaintiff's argument involves only the reasoning development level.

The DOT states that the GED, of which reasoning level is a component, addresses educational background.  Nothing in the record or Plaintiff's arguments suggest that Plaintiff's education is insufficient for the jobs identified by the vocational expert which are assigned reasoning level 2.  Plaintiff completed high school in South Korea and some vocational training.  The ALJ limited Plaintiff to simple and routine work, not as a result of a lack of educational development, but because Dr. Farrell opined she had difficulty with concentration.  The undersigned finds that Plaintiff's reference to the reasoning development level has not identified a conflict between the DOT and the vocational expert's testimony.

The undersigned finds that the reasoning level presents no basis for remand of this case.  Social Security Ruling (SSR) 00-04P addresses reliance on vocational expert testimony and provides:

> When there is an <u>apparent</u> conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-04P, 2000 WL 1898704 (emphasis supplied).  In this case the ALJ did all that was required of her.  The ALJ inquired of the vocational expert and satisfied herself that the vocational testimony was consistent with the DOT.  [R. 87].  There is no conflict apparent from the record.  The ALJ thus discharged her responsibility.

Only Plaintiff's argument on appeal suggests the existence of a conflict between the DOT and the vocational expert testimony. That alleged conflict is not one that is obvious as might be the case if the vocational expert testified that one limited to occasional lifting of 10 pounds could do a job at the medium level of exertion where frequent lifting and carrying of up to 25 pounds is required. It takes no particular expertise to conclude that 25 pounds is greater than 10 pounds and that something that occurs frequently happens more often than something that occurs occasionally. However, a comparison between the DOT reasoning level and the complexity of a job is not obvious. That comparison requires vocational expert testimony. Such expert testimony is not present in this case. Through argument alone, and without having presented any vocational evidence to support the argument, Plaintiff's counsel has constructed a non-obvious conflict between the DOT and the vocational expert's testimony. The vocational evidence in the case is contrary to Plaintiff's argument. Based on the foregoing, the undersigned finds that Plaintiff's reference to the DOT reasoning level in comparison to the RFC does not identify a conflict between the vocational expert's testimony and the DOT and therefore does not present a basis for remand.[5]

---

[5] The undersigned observes that, even though the DOT states the GED addresses general educational background not specific job tasks, courts have remanded cases for further development and discussion of the reasoning level component of the GED in relation to RFC findings. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In fact, the question of the role of the DOT reasoning level in assessing the complexity of jobs is an issue that frequently appears in appeals of Social Security disability decisions. However, in over 20 years of reviewing Social Security appeals, the undersigned cannot recall a vocational expert ever testifying that a job was or was not suitable for an RFC based on the reasoning level in the DOT. Rather, in the experience of the undersigned, vocational experts routinely and uniformly testify in terms of the DOT SVP rating as an indicator of job complexity. In addition, typically neither the ALJ nor claimants' attorneys ask vocational experts about the reasoning level for a job. The fact that vocational experts testify in terms of the SVP rating and not the reasoning level may be significant, but since vocational experts are not questioned on this topic courts, who are not vocational experts, have parsed the language in the DOT related to reasoning level as if they were interpreting a statute rather than applying a vocational tool. Cases have
(continued...)

**Conclusion**

The undersigned United States Magistrate Judge finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge RECOMMENDS that the decision of the Commissioner finding Plaintiff not disabled be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before July 30, 2019.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

---

[5] (...continued)
been remanded based on reasoning level ratings without any information about whether the reasoning level has any practical significance from a vocational expert's perspective. *Stanfell v. Colvin*, 2016 WL 1212771 (E.D. Okla.) (finding RFC for simple tasks appeared to conflict with DOT reasoning level 2); *Tabor v. Colvin*, 2015 WL 5724857 (E.D. Okla.)(same); *Ward v. Colvin*, 2015 WL 9438272 (W.D. Okla.) (RFC for simple, routine, repetitive tasks inconsistent with reasoning level 3).
  In *Hackett*, decided in 2005, the Tenth Circuit stated that it was unfortunate that the vocational expert was not questioned about the reasoning level by Plaintiff's counsel at the hearing before the ALJ. The Court noted the ALJ could have responded by explaining or changing the ruling. 395 F.3d at 1176. Today it is still unfortunate that vocational experts are not questioned about the DOT reasoning level in relation to job complexity. As the *Hackett* Court noted, Plaintiffs challenging a denial of benefits are not required to preserve issues in the proceedings before the Commissioner. *Id*. The undersigned further observes that those representing claimants have a disincentive to question vocational experts about the DOT reasoning level because, although such questioning would promptly clear up any possible ambiguity, it would preclude a potential issue on appeal. If the question of whether the DOT reasoning level is an appropriate indicator of the complexity of a job is to be resolved, it will be because ALJs take it upon themselves to question vocational experts on the topic.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 16th day of July, 2019.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE