UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

YOUNG Y.W.,                           )
                                      )
                  **Plaintiff,**      )
                                      )
v.                                    )     Case No. 18-CV-0154-CVE-FHM
                                      )
ANDREW M. SAUL,                       )
Commissioner, Social Security         )
Administration,                       )
                                      )
                  **Defendant.**      )

## **OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 16) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 17) to the report and recommendation, and she seeks remand for further review. Defendant has filed a response to plaintiff's objection (Dkt. # 18).

### I.

On October 14, 2014, plaintiff applied for benefits, alleging disability due to both physical and psychological conditions, including loss of hearing, degenerative disc disease, depressive disorder, anxiety disorder, and somatic dysfunction disorder. Dkt. # 10, at 17. Plaintiff requested a hearing before an administrative law judge (ALJ), and that hearing was held on February 15, 2017. Dkt. # 10, at 15.

Plaintiff appeared at the hearing and was represented by an attorney. Id. Plaintiff was fifty-three years old at the time of the hearing and fifty years old when she claimed benefits. Dkt. # 10, at 26. Plaintiff lives with her boyfriend, who owns the house in which she resides. Dkt. # 10, at 73.

She receives food stamps, but has no income. Id. at 20. She has not worked since the amended date of her alleged disability, which is October 11, 2011. Id. Prior to her alleged disability, in 2006, plaintiff worked as a machine operator for EmbroidMe, a local embroidering company. Id. at 76. While there, she did many tasks, including operating machinery, cleaning, embroidering items, and opening and unpacking boxes. Id. After working for EmbroidMe, plaintiff worked in 2009 as a nail technician. Id. at 76-77. Plaintiff testified that, while working for EmbroidMe, she would not lift much weight, but while working as a nail tech, she would lift ten to fifteen pounds of weight at a time. Id. at 76, 78. Plaintiff testified that she wears hearing aids. Id. at 79. She is right-handed, but drops things with her right hand. Id. at 20. She also testified that she has been going to counseling and recovery services for at least five years. Id. at 80. Plaintiff alleges that she cannot carry more than five pounds of weight, and cannot sit, stand, or walk for more than fifteen to thirty minutes at a time. Id. at 80-81. She also complains of lower back pain, neck pain, right shoulder pain, and trouble sleeping due to her depression. Id. at 20, 82. Plaintiff went to high school in South Korea, and English is her second language. Id. at 20, 22. Plaintiff takes medication for sleeping. Id. at 82.

At the disability hearing, the ALJ called vocational expert (VE) Ann Young, L.P.C., a licensed professional counselor, to testify about plaintiff's previous work history and her ability to work. Id. at 87. The VE testified that plaintiff has been a manicurist, which the VE described as a semi-skilled job with sedentary exertion, and an embroidery machine operator, which the VE described as an unskilled job requiring light exertion according to the Dictionary of Occupational Titles (4th ed. Rev. 1991) [DOT]. Id. at 88-89. The ALJ next asked the VE a series of hypotheticals. Id. at 89. The ALJ first asked whether a hypothetical individual of the plaintiff's age, education, and past jobs, who could understand simple one to three step instructions with routine supervision, with

breaks every two hours, and who occasionally interacted with supervisors and coworkers but never with the general public, could perform any of the jobs plaintiff had occupied prior to claiming disability. Id. at 89-90. The VE responded that the hypothetical would allow for work as an embroidery machine operator (DOT § 786.685-018) but not as a manicurist (DOT § 331.674-010). Id. at 90. The VE was next asked whether this hypothetical individual could perform any other jobs. Id. The VE answered that the individual could be a hand packager (DOT § 920.587-018), a laundry sorter (DOT § 361.684-014), or a dishwasher (DOT § 318.687-010), which are all unskilled position with medium exertion according to DOT. Id. at 90-91.

> The VE was asked further to assume that the hypothetical individual
>
> is able to lift, carry, push[,] or pull up to ten pounds frequently and twenty pounds occasionally, is able to sit up to six hours in an eight hour day, is able to stand and/or walk up to six hours in an eight hour work day, is able to perform simple, routine tasks with regular breaks every two hours, is able to occasionally interact with supervisors as needed to receive instructions, is able to work in proximity to coworkers but should have no more than occasional direct work interaction with coworkers and should never interact with the general public.

Id. at 91. The ALJ asked if this individual could perform the jobs the VE described or any other jobs. Id. at 91-92. The VE responded that the hypothetical individual could work as an embroidery machine operator (DOT § 786.685-018), a laundry sorter (DOT § 361.684-014), an assembler (DOT § 706.684-022), or a garment folder (DOT § 789.687-066). Id. When the VE was then asked to narrow the results to only those that have a noise level at or less than a routine office setting, the VE stated that the embroidery machine operator and the laundry sorter would be taken out. Id. at 92-93. The ALJ then closed the hearing, but prior to doing so asked plaintiff's attorney to explain the process to plaintiff, "because [the ALJ] hate[s] felling like [he is] having to shout at [plaintiff]." Id. at 96.

3

On March 23, 2017, the ALJ issued a written decision finding plaintiff not disabled. Id. at 12. The ALJ found that plaintiff had not engaged in substantial gainful activity since October 14, 2014, that she had severe impairments affecting her ability to work, and that her impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 17-18. The ALJ next formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. Id. at 20. The ALJ found that plaintiff could perform "light work," as defined by 20 C.F.R. 416.967(b), with certain restrictions. Id. Among the restrictions in plaintiff's RFC was the determination that plaintiff

> is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally; able to sit for up to six hours in an eight hour workday; able to stand and/or walk up to six hours in an eight hour work day; . . . able to perform simple, routine tasks with regular breaks every two hours; able to occasionally interact with supervisors as needed to receive work instructions; able to work in proximity to coworkers but should have no more than occasional direct work interaction with coworkers; [and] should never interact with the general public.

Id. Based on the RFC and the record, the ALJ determined that plaintiff could perform her past work as an embroidery machine operator. Id. at 26. The ALJ also found that plaintiff could perform other occupations present in the national economy, specifically listing the laundry sorter (194,000 jobs in the national economy), assembler (208,000 jobs in the national economy), or garment folder (75,000 jobs in the national economy), all being positions previously identified by the VE, and all of which the DOT defines as "light" exertion, unskilled work. Id. at 27. The ALJ concluded by stating that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

On June 3, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 15. Plaintiff thereafter sought judicial review, arguing that the ALJ committed

4

several errors, including the step four determination, the step five determination, and the RFC determination. Dkt. # 17, at 1-6. The Court referred the case to the magistrate judge, who entered a report recommending that the Court affirm the ALJ's decision. Dkt. # 16, at 12.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id*. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

5

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The ALJ decided the case at step four of the analysis, but she made alternate findings at step five. Dkt. # 10, at 25-27. At both steps, the ALJ determined that plaintiff's claim for benefits should be denied. Id. The magistrate judge recommended that the ALJ's decision be upheld. Dkt. # 16, at 12. In her objection, plaintiff contends that the ALJ erred at step four, step five, and in the determination of plaintiff's RFC. Dkt. # 17, at 1-6.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

A. The ALJ's Findings at Step Four

The Court considers plaintiff's step four argument alongside her RFC argument, because the ALJ determined both in step four. Plaintiff argues first that the ALJ improperly considered her prior experience as an embroidery machine operator because that job did not qualify as "substantial gainful activity" and thus is irrelevant work experience. Dkt. # 17, at 1, 6-8. Defendant does not contest this argument. See Dkt. # 18. Plaintiff then argues that the ALJ's determination of plaintiff's

6

"severe" physical impairments lack substantial evidence, and that the ALJ should have included plaintiff's hearing loss in the RFC. Dkt. # 17, at 7-8. Defendant counters that the ALJ's determinations were proper and that the Court should not second guess the ALJ's factual determinations under the substantial evidence standard of review. Dkt. # 18, at 2-3

At step four, the ALJ must determine "whether a claimant's impairments prevent her from performing her past relevant work." Wall, 561 F.3d at 1052 (citing Allen, 357 F.3d at 1142). "A claimant capable of performing past relevant work is not disabled within the meaning of the Social Security Act." Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir. 1993) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Step four has three separate phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted). While the claimant bears the "ultimate burden of proving that she is disabled," at step four the ALJ has a duty "of inquiry and factual development." Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993) (citing Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984)).

The ALJ found at step four that plaintiff could perform her past work as an embroidery machine operator as that occupation is generally performed. Dkt. # 13-2, at 25. Plaintiff argues that the ALJ made two related errors in the second phase of step four:[1] she considered plaintiff's former employment as an embroidery machine operator to be past relevant work, and she failed to make the

---

[1] Plaintiff makes no argument regarding the first phase of step four.

required specific findings of the physical and mental demands of plaintiff's past relevant work. Dkt. # 17, at 1, 6. These errors, plaintiff argues, led to an incorrect finding in the third phase of step four. Id. at 6-8.

Previous employment is "past relevant work" when "it was done within the last 15 years, lasted long enough for the person to learn to do it and was substantial gainful activity." SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). Plaintiff does not contest that she held the position as embroidery machine operator within the last fifteen years or that she did not learn the position, arguing instead that it was not substantial gainful activity. See Dkt. # 12, at 4-5. Substantial gainful activity is employment for which the individual earned wages equal to or exceeding an amount provided by regulation. 20 C.F.R. § 404.1574(b)(2) (2006). The record shows that plaintiff was an embroidery machine operator only in the year 2006. Dkt. # 10, at 76. The regulations state that, for the year 2006, earnings greater than $860 per month show that employment was substantial gainful activity. 20 C.F.R. § 404.1574(b)(2); see also id. Table 1. In that year, plaintiff earned a total of $8,494.37, or an average of $707.86 per month. Dkt. # 12, at 5. Thus, plaintiff's prior work as an embroidery machine operator is not past relevant work.

As the ALJ's findings at phase three of step four were based on her determination that plaintiff's occupation as an embroidery machine operator was past relevant work, those findings are not based on substantial evidence. Therefore, the ALJ's finding of non-disability at step four was in error.[2] However, the ALJ made alternate findings at step five of the analysis, and if her step five

---

[2] As the Court finds error in the ALJ's determination of plaintiff's past relevant work, the Court does not reach plaintiff's second argument, that the ALJ did not make specific findings about the physical and mental demands of her past relevant work. Dkt. # 17, at 6-8.

findings are not in error then any error at step four is harmless. See Pauley v. Chater, 64 F.3d 670, 670 (10th Cir. 1995) (unpublished).[3]

### B. The ALJ's Alternate Findings at Step Five

Plaintiff argues that the ALJ erred at step five of the analysis, stating that the ALJ did not include hypothetical questions to the VE about plaintiff's alleged hearing disability and mental impairments. Dkt. # 17, at 1-3. Plaintiff also argues that the VE should not have included the job of assembler, given that it allegedly involves more than occasional interactions with co-workers, or the jobs of assembler and laundry sorter, given that they are DOT reasoning level two, and plaintiff alleges that she qualifies only for reasoning level one jobs. Id. Defendant counters that the ALJ found plaintiff's hearing loss to be not severe, and the VE properly opined that the jobs of assembler and laundry sorter were appropriate given their DOT classifications. Dkt. # 18, at 3-4.

At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists in the economy that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work beyond her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

---

[3]     This and all other unpublished decisions are not precedential; they are cited for their persuasive value only. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because it rests on the VE's testimony, which plaintiff argues is wholly unreliable because it conflicts with the DOT as to the laundry sorter and assembler positions (both step 2 instructions according to DOT), and it rests on an incomplete hypothetical. Dkt. # 17, at 2-5. The Tenth Circuit has stated that, when there is a conflict between the DOT and the testimony of a VE, the ALJ "must investigate and elicit a reasonable explanation for any conflict . . . before the ALJ may rely on the expert's testimony." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); see also SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Failure to resolve the conflict is reversible error, unless the error is harmless. Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009); see also Krueger v. Astrue, 337 F. App'x 758, 761-62 (10th Cir. 2009). However, the Court need not reach plaintiff's arguments as to the laundry sorter and assembler positions, because there is no conflict between the VE's testimony and the DOT as to the garment folder.[4] Thus, there is no error in the ALJ's reliance on the VE's testimony as to that position. Plaintiff's failure to argue that she cannot perform the garment folder position makes any alleged inconsistency between the ALJ's step four determinations and the hypotheticals to the VE harmless error.

Plaintiff's argument that the ALJ's hypotheticals to the VE were incomplete because they are inconsistent with certain medical findings is also rejected. Plaintiff argues that the ALJ took into consideration opinions from William H. Farrell, Ph. D., that plaintiff has moderate limitations in her ability to carry out a normal work day or work week. Dkt. # 17, at 2. Dr. Farrell also opined that

---

[4] The reasoning level for the garment folder position is "Level 1 - Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT § 789.687-066. Plaintiff contends that level two positions, as opposed to level one positions, are inappropriate for her.

plaintiff has difficulty carrying out detailed instructions. Id. at 2-3. However, the ALJ's hypothetical limited plaintiff to simple, routine tasks only. Dkt. # 10, at 89-90. Plaintiff argues that Dr. Farrell's findings should have removed the laundry sorter and assembler positions but not the garment folder position. Dkt. # 17, at 3-5. But as discussed above, even assuming that plaintiff's argument has merit, she is still capable of performing the job of garment folder, a reasoning level one position. In addition, the ALJ considered plaintiff's hearing limitation, but did not consider it to be severe. Dkt. # 10, at 18. And even if plaintiff's hearing condition were considered severe, the ALJ included in the hypothetical to the VE that the positions should be limited to a "noise level . . . no more than that found in a routine office setting."[5] Dkt. # 10, at 92. For these reasons, the ALJ made no error in her step five determination.

In summary, the Court finds that the ALJ's finding at step four of no disability is not supported by substantial evidence in the record. However, the ALJ's analysis at step five is complete and, for that reason, any error at step four is harmless.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 21) is **accepted**, and the Commissioner's decision is **affirmed**. A separate judgment is entered herewith.

**DATED** this 27th day of August, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] The ALJ found that, although plaintiff has "decreased hearing acuity in the right ear, [she] had no difficulty carrying on a conversation in a normal voice in a quiet room," and most of her hearing difficulty is "more a language barrier than decreased hearing." Dkt. # 10, at 17.